******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

D'AURIA, J., concurring in part and dissenting in part. I agree fully with part I of the majority's cogent and thorough opinion. Specifically, I agree that the defendant's corpus delicti claim is reviewable; that the corpus delicti rule is a substantive rule of criminal law and not a purely evidentiary rule of admissibility; and that there was sufficient evidence to sustain the defendant's conviction.

I also agree with part II A of the majority's opinion, and with the Appellate Court, that the trial court erroneously ruled that the videotape of Patrick J. Allain's polygraph pretest interview with the police was inadmissible. I disagree, however, with part II B of the majority's opinion, which concludes that the trial court's error was harmless. Rather, for substantially the same reasons detailed by the Appellate Court in its persuasive opinion on this issue; see *State* v. *Leniart*, 166 Conn. App. 142, 194–97, 140 A.3d 1026 (2016); I conclude that the defendant has met his burden of demonstrating the harmfulness of the trial court's error. I therefore respectfully dissent from the majority's decision reversing in part the judgment of the Appellate Court, on the ground that the exclusion of the pretest videotape was harmless, and would instead affirm the Appellate Court's judgment ordering a new trial.[1]

The majority finds the question of harm in this case to be a "close call," but ultimately concludes that the defendant has not demonstrated that exclusion of the videotape substantially affected the verdict. My own review of the videotape of Allain's pretest interview, when measured against the cross-examination of Allain that defense counsel was both able to undertake and prevented from undertaking without the benefit of that interview, leads me to a contrary conclusion. Given the importance of Allain as a witness, and given the defense the defendant sought to mount, I am not left with "a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 311 Conn. 80, 89, 83 A.3d 595 (2014).

The state admitted that Allain was a "crucial" witness for its case. He was the only witness who was with the defendant and the victim on the night of her disappearance. Indeed, Allain understood—and was concerned— that the police might conclude that *he* had murdered the victim. Over the years, Allain had made a number of statements incriminating himself, including asking his father to help him move the victim's body from its burial spot. In fact, there was sufficient "direct evidence" that Allain might have committed the murder that the defendant sought—and the trial court gave— a third-party culpability charge to the jury. See *State* v. *Schovanec*, 326 Conn. 310, 319, 163 A.3d 581 (2017).

The defendant's cross-examination of Allain did not simply attack the truthfulness of his testimony, the clarity of his memory of the events of that night or his own potential culpability. Rather, the defendant sought to develop a specific theme of bias: that Allain had increasingly tailored his statements over the years—and on the witness stand continued to tailor his testimony—to what authorities wanted to hear by implicating the defendant. Allain was motivated to do this, the defendant contended, either to deflect attention away from himself as a suspect in the murder, or to secure more favorable treatment for himself, both as a participant in the victim's disappearance and in other cases for which he had received or continued to face significant sentences.[2]

In response to the defendant's argument that the trial court's error harmed him, both the state and the majority argue that the defendant had ample opportunity to cross-examine Allain and impeach his direct testimony. And, in fact, as the majority details, the record of Allain's cross-examination reveals that defense counsel was able to make some inroads in developing a theme of bias.

Specifically, Allain admitted that beginning in 1997, and up until the time of trial in 2010, he had met with the state police "around twenty-five" times. Only one of those meetings was videotaped: the 2004 polygraph pretest interview at issue in this case. Allain had also given the police three separate and somewhat varying written statements, in 1997, 2004 and 2007.[3] Part of the defendant's theme was not only that Allain had left out significant details in each of those statements such that he should not be believed, but that with each statement—and ultimately in his trial testimony—he included significant details that increasingly implicated the defendant, especially as the defendant began to understand that the police were looking harder at him as a suspect.

Although the jury certainly had the opportunity to assess Allain's demeanor in the context of the trial as he faced aggressive cross-examination on these issues, the videotape was the only actual display of Allain's exchanges with the police, evidence of what the Appellate Court aptly described as "subtle but significant pressure" by the police[4] "to shape Allain's story" in a way that allowed them to get the " 'big fish' " (i.e., the defendant). *State* v. *Leniart*, supra, 166 Conn. App. 195–96. It would, of course, have been for the jury to determine whether it agreed with these characterizations of Allain's interactions with the police. It would also have been for the jury to infer, if it chose to do so, that the police had perhaps exerted similar pressure on Allain to shape the statements he had given them over the years (1997, 2004 and 2007), resulting in his trial testimony, during which he continued to add details he had

neither included in any previous written statement nor disclosed to state police Trooper Tim Madden at the pretest interview.

The exclusion of the pretest interview not only prevented the defendant from showing to the jury Allain's interaction with the police for the jury's own assessment, but deprived the defendant of a significant check on Allain's trial testimony. On several occasions, the defendant was unable effectively to examine Allain (who was accompanied at the defendant's trial by state appointed counsel) about what the police had said to him or he had said to them at the pretest interview because he answered that he could not recall. At one point, defense counsel asked the defendant if it would refresh his recollection if he viewed the videotape. The state objected, and the trial court sustained the objection. Thus, to the extent the state suggests in its reply brief that any error was harmless because the defendant could have kept Allain honest by impeaching him with the videotape or refreshing his recollection, this argument rings hollow. Compare id., 188 n.33. Rather, I agree with the Appellate Court that the defendant has carried his burden of demonstrating harm.[5]

Therefore, I concur in part and dissent in part.

[1] Because I agree with the Appellate Court that the trial court's error should result in a new trial, it is not necessary for me to reach the expert witness issue addressed in part III of the majority's opinion. However, because the majority has reached the issue and because the issue would likely arise at a new trial if one were to be ordered; see Practice Book § 63-4 (a) (1) (B); I express my agreement with the majority's conclusion that the defendant has not demonstrated that the trial court abused its discretion in excluding the proffered expert testimony. I therefore join part III of the majority's opinion.

[2] As the Appellate Court noted, at the outset of the pretest interview in 2004, Allain "repeatedly made clear that he was motivated to take the test because he recently had been charged with violating his probation and had a suspended period of incarceration hanging over his head," and "his probation officer was 'pushing toward violating me if I don't take'" the polygraph test. *State* v. *Leniart*, supra, 166 Conn. App. 183. By the time he testified at the defendant's trial in 2010, Allain had served nearly two and one-half years of a ten year sentence for sexual assault in the second degree. Allain was never charged at all in relation to the victim's disappearance in the present case.

[3] There is some confusion about the date of one of the statements. It appears to be dated 2001, but it could have been 2007.

[4] The videotape shows not just the interview with state police Trooper Tim Madden, but a brief exchange with two other police officers. This exchange at least arguably could have been construed to suggest not so "subtle pressure." When asked by Madden if he was taking the polygraph voluntarily, Allain referred to the fact that he was facing a violation of probation charge and understood from the other officers that he likely would be returned to jail for as much as five years for violating his probation if he did not take the polygraph test. Madden sought to disabuse Allain of this notion himself and also brought the other officers into the room in the middle of the pretest interview to assure him that that would not happen. Madden further admonished Allain that he would not administer the polygraph test unless he was submitting to it voluntarily. Shortly after talking to the other officers, Allain indeed backed off and said he was taking the polygraph to "tell the truth" and "do the right thing," not because of any threat to be returned to jail, as he had indicated at the beginning of the interview. Apparently satisfied, Madden pressed forward with the interview. This would have been an important set of exchanges for the jury to evaluate.

[5] In light of the critical nature of Allain's testimony, I do not find persuasive the state's passing mention in its brief that the evidence of the defendant's

guilt was overwhelming, making any error harmless.

---